# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **MCKENZIE PERY HOLLOWAY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **V.** ) | **Case No. ____** |
| ) | |
| **DANAHER CORPORATION and** ) | |
| **RADIOMETER AMERICA, INC. a/k/a** ) | |
| **HEMOCUE AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Plaintiff, MCKENZIE PERY HOLLOWAY, brings this cause of action against Defendants, DANAHER CORPORATION and RADIOMETER AMERICA, INC. a/k/a HEMOCUE AMERICA, for retaliation against Plaintiff for filing a complaint against one of her supervisors for conduct and practices that were discriminatory under the Tennessee Human Rights Act., T.C.A. § 4-21-101, *et seq*. (hereinafter "THRA").

## PARTIES

1.      McKenzie Pery Holloway (hereinafter "Plaintiff") is a citizen and resident of Gallatin, Tennessee.

2.      Danaher Corporation (hereinafter "Danaher Defendant") is a foreign corporation incorporated in the State of Delaware, which has not filed as a foreign corporation in Tennessee and has no registered agent in Tennessee. Danaher Defendant is a parent corporation having various subsidiaries and entities that are a part of its organization, including Radiometer America, Inc. and Hemocue America.  Danaher Defendant is defined as an employer under the THRA.

3.      Radiometer America, Inc. is a subsidiary of Danaher Defendant and does

business as Hemocue America (hereinafter "Hemocue Defendant") is a foreign corporation incorporated in Delaware, whose registered agent in Tennessee is United Agent Group, Inc., 205 Powell Place, Brentwood, Tennessee 37027. Hemocue Defendant is defined as an employer under the THRA.

4.   The principal office of the Danaher Defendant is 2200 Pennsylvania Ave, NW, Washington, DC 20037-1700.

5.   The principal office of the Hemocue Defendant is 250 S. Kraemer Blvd, Mailstop B1.SW.11, Brea, California 92821.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are citizens of separate states and the amount in controversy exceeds $75,000.

7.   Venue is proper in this Court, as some of the acts alleged herein occurred in the Middle District of Tennessee including Plaintiff's hiring and firing.

## FACTS

8.   Plaintiff was employed by Defendant as a sales territory representative on September 5th, 2023.

9.   While employed by Defendant, Plaintiff was a successful territory representative, meeting the quotas for sales that she was expected to meet.

10.   Plaintiff never received any negative comments, write ups, reprimands or any other disciplinary actions relating to her performance or any other aspect of her job from her employer or any management personnel from the time she was employed through the 17th day of September 2024.

11.   On the 3rd day of April 2024 while attending a training session with 4 of her

male colleagues, her supervisor embarrassed and humiliated Plaintiff, for no discernible reason, in front of her male colleagues, and other company employees.

12. The supervisor harassed her in the meeting room, singling her out when she expressed confusion during a role-play exercise and angrily told Plaintiff to "read the questions you wrote down," and then continued to read the probing questions.

13. During the same class setting, while she, as well as some of the men in the class, had their laptops open, the same supervisor went to Plaintiff's table and slammed her laptop shut.

14. The conduct of the supervisor was considered by Plaintiff and others who saw his mistreatment, as harassment based upon her sex, female.

15. The conduct of the supervisor could be determined to be discriminatory under the THRA.

16. After the meeting concluded, Plaintiff attempted to have a discussion with the supervisor and his response was to manhandle Plaintiff and push her up against the wall in the classroom building hallway with his forearm while loudly yelling at her. Plaintiff tried to leave several times but was physically restrained by the supervisor's forearm.

17. Plaintiff opposed the discriminatory practices of the supervisor and, on or about April 16, 2024, contacted David Antinoja in human resources (HR) and reported the offensive and perceived discriminatory practices of TJ Appleby.

18. In conversations with David Antinoja in the Human resources department on April 16, 2024, followed up by an email on April 17, 2024.

19. Thereafter, Plaintiff had discussions with Mary Ann Marcuzzi on April 29, 2024, and an investigation was launched by Ms. Marcuzzi on that date.

20. Ms. Marcuzzi found the investigation to be inconclusive on May 8, 2024.

21. Thereafter, on May 13, Mr. Antinoja stated to Plaintiff that she would "have to figure out if working there was worth it or not" when Plaintiff told him that she was not comfortable having Appleby ride alone with her in her vehicle.

22. Mr. Appleby continued to impose accountability on Plaintiff for inconsequential conduct, for which none of her male colleagues were held accountable under the same circumstances.

23. On July 18th launched an unfounded investigation against Plaintiff.

24. On July 24th Plaintiff filed an EEOC claim to protect herself.

25. During the pendency of Plaintiff's EEOC charge, Defendant(s) chose to terminate Plaintiff on September 17, 2024, effective immediately.

26. The termination of Plaintiff was specifically due to her reporting of the perceived discriminatory behavior of the supervisor, and Plaintiff's subsequent filing of the EEOC charge.

27. The separation notice that was delivered to Plaintiff by Defendant stated that the reason for her discharge was "not following company policies."

28. The motivation for the termination was her report of perceived discriminatory conduct based on her sex by her supervisor and any other reason stated by Defendant is purely pretextual.

29. Plaintiff avers that she was terminated by the CEO of Defendant in retaliation for Plaintiff's protected conduct, specifically her report of her opposition to discriminatory practices under the THRA.

30. Plaintiff filed a Charge of Discrimination with the EEOC, and received her Notice of Right to Sue on May 28, 2025.

## DAMAGES

31.     As a result of the retaliation and wrongful termination stated above, Plaintiff has suffered, and will continue to suffer, emotional distress, pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life, embarrassment, and humiliation, for all of which she is entitled to compensatory damages under the THRA.

32.     Plaintiff seeks damages for lost wages past and future pursuant to the THRA, resulting from her retaliatory discharge from her employment with Defendant(s).

33.     Plaintiff further sues for attorney's fees, court costs, and discretionary costs if she is the prevailing party in this litigation, as authorized by the THRA.

**WHEREFORE,** Plaintiff prays for relief as follows:

1.     That process issue, requiring Defendants to answer this Complaint in the time provided by law;

2.     After the discovery process, that this case be heard on its merits;

3.     That Plaintiff be awarded $300,000 in compensatory damages;

4.     That Plaintiff be awarded back and front pay in accordance with her individual losses, which are ongoing;

5.     That Plaintiff be awarded attorney's fees, court costs, discretionary costs, and all further relief to which she is entitled; and

6.     That Plaintiff be awarded all further and general relief that the Court deems is appropriate in this case.

Respectfully Submitted,

s/ Mary A. Parker
Mary A. Parker #6016
PARKER & CROFFORD
5115 Maryland Way
Brentwood, TN 37027

Tel: 615-244-2445
Fax: 615-255-6037
mparker@parker-crofford.com
*Attorneys for Plaintiff*